# HAWAIIAN COMMERCIAL AND SUGAR COMPANY
## v. WAILUKU SUGAR COMPANY.

### APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED JULY 5, 1901.     DECIDED FEBRUARY 19, 1902.

### FREAR, C.J., GALBRAITH AND PERRY, JJ.

A decree is binding between co-defendants, when they are adversary to each other and when their rights as against each other are adjudicated, whether there are cross-pleadings between them or not, if the matters could be adjudicated under the pleadings between the plaintiffs and defendants.

One who appears generally and is made a party at his own request is bound by the decree so far as it properly goes under the pleadings, even though he appeared in consequence of a published notice which was not so broad as the complaint.

The doctrine of splitting causes distinguished from that of *res judicata*.

So far as the ultimate matter adjudicated is concerned, all intermediate matters are conclusively presumed to have been adjudicated whether in fact raised or adjudicated or not.

As to other ultimate matters, only those intermediate matters are regarded as adjudicated which were in fact adjudicated.

Other ultimate matters themselves are not regarded as adjudicated if they were not in fact adjudicated although they might have been so far as the pleadings were concerned.

A decree is binding as to necessary inferences though not as to possible or probable inferences from it.

Under a complaint that the defendant unlawfully constructed and maintained a dam and by means thereof diverted water, a decision that the dam need not be removed because it might be lawfully used for a diversion to certain land and does not appear to be used for a diversion to any land, does not settle that it might lawfully be used for a diversion to other lands.

Nor does a decision that a certain quantity of water may lawfully be diverted at other dams settle that the same or any less quantity may lawfully be diverted at this dam.

A decision that a certain quantity of water may be taken from an ancient ditch by means of a new flume to lands that have no water rights because of a discontinuance in the use of a certain other quantity of water on other lands that have water rights, does not settle that an additional quantity may afterwards be so taken at the same point, or even the same quantity if the use of water on the old lands has been resumed, or an additional quantity in lieu of using it on still other lands that have water rights.

Under a complaint that defendant enlarged ancient ditches and took more water than it was entitled to and took water to lands that had no water rights, it was proper to decide that the defendant had acquired a right to take all the water in controversy by day and the plaintiffs a similar right by night, as a basis for the conclusion that the defendant's acts were not prejudicial to the plaintiff's rights, since if it had the right to take all such water at certain points during certain times it was immaterial whether it took it in large or small ditches or to lands that had or to lands that had not water rights.

Such intermediate finding of an alternate day and night use is *res judicata* in other suits between the same parties as to the same or other acts complained of.

The decision in *Lonoaea v. Wailuku Sugar Co.*, 9 Haw. 651, that the defendant had an exclusive day right to water (subject to certain exceptions), referred to prescriptive rights only and did not cover surplus or storm water. It was not intended to cover surplus water, nor is it a necessary inference that it did, in spite of an actual contrary intention.

That decision did not (aside from the finding as to an exclusive prescriptive day right) adjudge that the defendant had a general right to a fair proportion of the surplus water, or that it was not then taking more than its proportion, if it had such a right. The court did not intend to so decide, nor is it a necessary inference that it did, even if the pleadings were broad enough to have permitted it to do so.

### OPINION OF THE COURT BY FREAR, C.J.

This is a suit in equity for an injunction to restrain the defendant from diverting water from the Wailuku stream on the island of Maui to the injury of the plaintiff. The defendant included in its answer a plea of former adjudication as to several matters alleged in the bill, and the Circuit Judge, by consent subject to the right of appeal, entered a decree sustaining the plea. The question on this appeal from that decree is how far

the decision in *Lonoaea et al. v. Wailuku Sugar Co.*, 9 Haw. 651, which is the decision relied on in the plea, is decisive of the present controversy.

No formal decree was entered in the former case, but as counsel on both sides have treated the decision as if it were a decree, we shall not raise the question as to how far a decision as distinguished from a decree may be relied on, either by way of plea or as evidence. It may be that the decision should be regarded as in the nature of a decree,—in view of the language of the statute relating to Commissioners of Private Ways and Water Rights, under which that case was brought, and in view of the practice in such cases.

The plaintiff is a California corporation and owns the greater part of the ahupuaa of Wailuku and various kuleanas therein. The defendant is a Hawaiian corporation and owns a considerable portion of the arable land of the ahupuaa and numerous kuleanas in the ahupuaa. The plaintiff's predecessor in title, Claus Spreckels, was a party to the former case. The plaintiff is bound by the decision in that case to the same extent that Claus Spreckels was. And although the latter was then a codefendant with the present defendant, he was bound equally with the plaintiffs in that case as to any rights that were adjudged to be in his co-defendant. A judgment or decree, of course, does not always bind co-defendants as against each other, but it does when they are adversary to each other. There need not be cross-pleadings between themselves. It is sufficient if they contest an issue with each other upon pleadings between them and the plaintiffs. The fact that they are formally on the same side is immaterial, if they have actually contested issues that might properly be contested under the pleadings between the plaintiffs and defendants. See 1 Van Fleet, Form. Adj. Sec. 256; *Elliott v. Pell,* 1 Paige 263; *Devin v. City of Ottumwa,* 53 Ia. 461; *Leavitt v. Wolcott,* 95 N. Y. 212; *Harmon v. Auditor,* 123 Ill. 122. The former case was brought originally by certain plaintiffs against the present defendant only, but after publication of notice others came in as plaintiffs and

Claus Spreckels came in as a defendant. Although nominally a defendant, his interests were with those of the plaintiffs rather than those of his co-defendant, and he appealed from several findings made by the commissioner in favor of the co-defendant. His counsel was one of the counsel for the plaintiffs also. He is bound by the decision so far as the decision properly went, and since the decision was not merely for or against the plaintiffs or defendants leaving the rights as between the defendants unadjudicated, but specifically declared certain rights to be in the co-defendant alone, it is difficult to see how some of the rights so adjudicated remained in him.

It may be, as contended, that the published notice in the former case was not as broad as the complaint and original summons, but Claus Spreckels, although not personally served with process, was nevertheless bound by the decision so far as it properly went under the complaint, for his general appearance and request to be made a party was a waiver of any defect in the published notice. Indeed it does not appear that he entered the case in consequence of the published notice, and it was immaterial whether he had proper notice or any notice as distinguished from knowledge so long as he appeared generally and became a party for all proper purposes.

The main question is, what was adjudicated in the former case? Elaborate briefs have been filed discussing a number of propositions under the law of *res judicata*—chiefly as to what was intended to be, what might have been and what is presumed to have been adjudicated under the pleadings. As we understand counsel, the doctrine of splitting causes is not relied on. That is based on public policy and is expressed in the maxim that a party ought not to be twiced vexed for the same cause. It would apply in general not only to matter which was not, but could have been, adjudicated under the pleadings, but also to matter that could not have been adjudicated under the pleadings, if the pleadings ought to have been made broad enough to cover such matter if intended to be relied upon and if such matter should have been litigated then if at all. A person may

bring several actions on as many different causes even though
he might join all the causes in one action, but he may not as a
rule bring several actions on different parts of one cause. The
doctrine of splitting causes is perhaps as closely allied to the
doctrine of *lis pendens* as to that of *res judicata*. The latter is
the doctrine relied on here. It is based on the presumptive cor-
rectness of the former decision, and the question is what that
decision was—not merely what it was intended to be, but what
it was in law, which depends not only on what it was intended
to be but also upon whether as so intended it went beyond or
fell short of the case presented by the pleadings.

We may assume on the one hand that the decision in question
could not properly go beyond the pleadings, for in our opinion
it did not do so. We may concede on the other hand the gen-
eral correctness of the proposition that a decision is decisive not
only of everything that is litigated but also of everything that
might be litigated in a case. But this proposition needs some
qualification before it can be intelligently applied. It has ref-
erence to a distinction between intermediate and final matters
in a case. A final decision fixes certain rights and in a contest
as to such rights it is incumbent upon parties to put in their
whole case. If they do not, it is their fault and they cannot
afterwards be permitted to set up what they previously omitted.
Consequently so far as the subject matter or ultimate thing
adjudged is concerned it is conclusively presumed that every
intermediate point that might have been raised was settled
whether it was raised or not. But as to a different subject,
only such points as were actually raised and decided in respect
of the first subject are regarded as settled. For although the
subject is different, still the parties have actually had their con-
test over the intermediate point and should not be permitted
to have a second contest; but intermediate matters not litigated
or decided in the first proceeding are not regarded as settled as to
a different subject, for not only have they not been decided in
fact but there was no duty to litigate them in the first case ex-
cept so far as that case was concerned. A party may waive his

right to litigate a matter as to one thing without waiving his right to litigate it as to another thing, for he may waive his right to the thing itself without waiving his right to another thing. See *Mossman v. Government*, 10 Haw. 421. But the presumption that intermediate matters were adjudicated which might have been litigated as to a particular ultimate matter is very different from a presumption that a different ultimate matter was raised and adjudicated even though it might have been under the pleadings if the parties and the court had seen fit to raise and decide it. To illustrate, a complaint might be broad enough to permit a decision as to all rights in a certain stream but the parties might actually litigate and the court actually decide only certain rights confessedly leaving others undecided. It would be conclusively presumed that all matters that might have been litigated as to the rights actually adjudicated were settled whether litigated or not, but as to the remaining rights only such intermediate matters as were in fact litigated would be regarded as settled, and the remaining rights themselves or ultimate matters could not be regarded as settled from the mere fact that they might have been. Of course, these propositions are stated subject to other established principles, such as that the parties must be the same, the matter must be directly in issue and the court must be one of complete jurisdiction. We may add also that another proposition relied on in argument, namely, that there is no estoppel as to matters that may be merely inferred from a judgment, applies only to inferences that are possible or probable and not to those that are necessary.

The Wailuku stream rises in the Iao valley, a large basin nearly surrounded by high precipitous mountains, and flows out of the valley through a narrow defile and down a gulch through comparatively low hills and plain country to the sea. In the defile there is a kuleana or small holding named Manienie near which the defendant has constructed a dam, a portion of the water above which it takes through a pipe and ditch to kula or dry land some distance below. A short distance below the defile the stream is tapped on the left bank by an ancient ditch called

Kalaniauwai and further down on the right bank by another ancient ditch called Kamaauwai. Kalaniauwai is tapped a short distance below its head by a comparatively new flume, constructed by the defendant, through which a portion of the water is taken across the stream to kula land below.

The first question arises in regard to the dam at Manienie. The complaint in the former case alleged that the defendant had unlawfully constructed the dam and unlawfully maintained it, whereby the flow of water in the stream was obstructed and diverted and the plaintiffs deprived of water to which they were entitled, and prayed that all illegal dams be abated. The commissioner decided that it did not appear that any water was being diverted by means of the dam, that Manienie had a water right, that to take water from the stream it was usual to tap the stream by means of a dam and ditch, and, as the dam in question might be used for a legitimate purpose and was not then used for any illegal purpose, he declined to order its removal. The Supreme Court on appeal sustained "the decision of the Commissioner in refusing to order the dam at Manienie removed, for the reasons given by him." The present bill alleges that the defendant has unlawfully constructed a large dam in the stream at a place called Maniania and unlawfully maintains the same there and uses the water flowing in a pipe and ditch from above the dam to irrigate large tracts of kula land not entitled to water for irrigation, and situated a mile or more distant therefrom, and by means of the dam is unlawfully diverting from the stream large quantities of water, &c., and prays for an injunction against the diversion of the water. Assuming that the Manienie in the former case is the Maniania of the present case and that the dam now complained of is the same that was complained of in that case, the decision in that case at most settled that that dam was lawfully constructed and maintained. It was not adjudged whether water could be taken from above the dam to distant kula land or not. So far as the construction and maintenance of the dam is concerned, it may be that every point that might have been raised and decided must be presumed to

have been settled, but so far as the diversion of water was concerned, although the complaint may have been broad enough to have permitted a consideration and decision of that question, still the evidence showed that no water was diverted, and there was no decision in fact as to whether it might properly be diverted or not in the way or in the quantity in which or to the place where it is now alleged to be diverted. It could not be presumed that the question of any particular diversion was settled merely because the dam was not ordered removed, for, aside from the fact that the decision shows the contrary upon its face, the refusal to order the dam removed might have been based on any one of several grounds, and in law as well as in logic it cannot be inferred that a conclusion was based upon any particular one of several possible premises. Nor did other portions of the decision, hereinafter to be more specifically referred to, which settled that the defendant was entitled to a certain quantity of water elsewhere, settle also that it could take the same or any less quantity at this dam to the kula lands below. That would depend upon whether the proposed change in the place of user would be prejudicial to the rights of others. That would be so even though the defendant had the right to take elsewhere all the water in the stream during specified hours and *a fortiori* if it had only the right to take elsewhere all or nearly all the water to which it was entitled, though not all in the stream, during certain hours. So much as to the diversion at the Manienie dam. Now as to other diversions.

The main difficulty as to other diversions, and this is the main difficulty in the case, lies in ascertaining just what was decided in the former case, and so we shall consider that question before stating the allegations in the present bill as to the other diversions in question.

The complaint in the former case alleged in substance that the defendant had unlawfully enlarged and tightened the dam and constructed a new dam, at the head of Kalaniauwai, and enlarged and deepened Kalaniauwai, and so maintained the same, whereby it took more water than it was entitled to and

deprived the plaintiffs of water according to their right; and had illegally tapped Kalaniauwai by means of a flume illegally constructed by it and thereby diverted large quantities of water from the auwai and maintained the flume and continued to divert the water, whereby, &c., and unlawfully enlarged Kamaauwai and so maintained the same and unlawfully diverted large quantities of water into the same beyond what it was entitled to, and taken water to land not entitled to the same beyond the limits of the auwai, whereby, &c., and prayed "that the rights of the parties in the water of said stream may be adjudicated, that all illegal dams, flumes and structures erected or maintained by defendant may be abated, that all illegal use of said water by the defendant may be restrained, that the method by which defendant obtains water from said stream may be regulated," &c.

The prayer is perhaps broad enough taken by itself to cover almost any question that might arise in connection with water rights in the Wailuku stream, but if taken in connection with the specific acts complained of, it would be considerably narrowed. The complaint was in substance that the defendant was taking by means of changes in the dams and auwais more water than it was entitled to through the two main auwais and was also taking water through the flume and otherwise to lands which had acquired no prescriptive water rights.

The ancient mode of diversion was for these auwais and the stream to each take one-third of the water in ordinary times, and then for the owners of land along the auwais and the stream to subdivide the water according to their prescriptive rights. But the defendant contended that the former mode of diversion had been changed by prescription so that, instead of a continuous flow of one-third of the water in each auwai and the stream, the defendant was entitled exclusively during the day (from 4 a. m. to 4 p. m.) and the plaintiffs during the night (from 4 p. m. to 4 a. m.). And as to the lands that it was irrigating which had no water rights, it contended that the water which it was so using was water which it was entitled to in

respect of other lands, and that it could so transfer the water so long as it did not interfere with the rights of others.

The commissioner held that the ancient mode of diversion had not been changed, that it was immaterial whether the dams and auwais had been changed or not, so long as each auwai took only one-third of the water, and that the transfer of water from lands that had to lands that had not water rights could not be made, inasmuch as it was not shown that the rights of others would not be prejudiced thereby, and therefore that the defendant should cease taking water through the flume. The Supreme Court on appeal held that, subject to some qualifications, the ancient mode of diversion had been changed by prescription from a continuous use to an alternate day and night use, that the dams should be kept substantially as they were then, and that the transfer of water from lands that had to lands that had not water rights could properly be made, inasmuch as the exercise of the defendant's right to use the water by day could not diminish the plaintiffs' supply by night. The minority of the court agreed with the majority, subject to certain further qualifications, that the alternate day and night use had become established, and was of the opinion that the transfer of water from certain lands to other lands did not prejudice the rights of others, basing this opinion, however, upon the quantity of water taken rather than upon the time when it was taken.

It is clear that it was decided, and properly so under the pleadings, that the defendant could irrigate by means of the flume and otherwise the land then in question which had no water rights, provided it refrained from using water belonging to other lands in such quantity as not to prejudice others in the enjoyment of their rights. This point was covered by the pleadings, was actually litigated and expressly decided. Of course the defendant could not continue to use the water on the new lands and at the same time resume the use of the water on the old lands, nor did the decision settle whether it could make other transfers of water in the future.

It was also properly decided under the pleadings that an alter-

nate day and night use had become established. The pleadings
raised the question whether the defendant was taking more
water than it was entitled to through the auwais and whether
it could transfer water from certain lands to other lands. The
court might have arrived at a solution of these questions by fol-
lowing any one of several lines of reasoning. It was at liberty
to select any one of these lines. The parties themselves seem
to have considered the question of continuous or alternate day
and night use the main question in the case. The controversy
apparently arose largely in consequence of alleged violations of
an alternate day and night use, and the evidence and argument
were directed largely to that question. The court also naturally
directed its attention to it. Was it one of the intermediate points
that might properly be passed upon in solving the questions
raised by the pleadings? We think it was. If the defendant
was entitled to take during the daytime at certain points all the
water there was in the stream or all the water that was in con-
troversy, though at times less than all there was in the stream,
or even all subject to certain exceptions so long as those excep-
tions were not interfered with, it was immaterial to others what
it did with that water or to what lands it took it. The majority
of the court so found as to the day and night use and so reasoned
as to whether the defendant was acting unlawfully in doing the
acts complained of. The minority was of the opinion that the
day and night use was not established in respect of sufficient of
the defendant's lands to justify the inference that the acts of the
defendant were lawful, and so adopted a different line of reason-
ing, that of the quantity of water taken irrespective of the time,
to support the same conclusion. The conclusion of the majority
followed from its premises. But as the minority did not agree
with the majority as to the soundness of those premises, it
adopted other premises to reach the same conclusion. The find-
ing by the majority that the day and night use was established
being an intermediate point that might properly be litigated and
decided and one that was actually litigated and decided, it is

*res judicata* as to the parties to that suit and their privies in other suits touching the same or different matters.

One of the most important questions is whether the former decision adjudged that the defendant had the right during the day, subject to certain qualifications, to all the water in the stream or to only the water to which it had a prescriptive right in respect of the lands owned by it. In other words, did that decision settle the question as to so-called surplus water, that is, the water, whether storm water or not, that was not covered by prescriptive rights. In our opinion, so far as the alternate day and night use was concerned, only prescriptive water rights were adjudicated. The concluding paragraph of the decision seems clear upon this point.

"The judgment of the Court is that the plaintiffs excepting those whose rights are specially considered herein above are entitled to such amounts of water as they have acquired by prescription for their various lands during the night from 4 o'clock p. m. to 4 o'clock a. m. of each day from the various large auwais leading from the Wailuku river; that the defendant corporation, the Wailuku plantation, is entitled to the water for its present estate from these auwais on each day of the week, excepting Sunday, from 4 o'clock a. m. to 4 o'clock p. m., the dams to be kept substantially as they are at present, composed of loose stones and dirt; the defendant corporation to carry out this order."

It thus appears that the defendant was adjudged to be entitled during certain periods to "the water *for its present estate* from these auwais." This does not mean that it was entitled for use on its then estate to all the water in these auwais, much less to all the water in the stream. It means that it was entitled, during certain hours from these auwais, to the water for its then estate, that is, that it was entitled to take from these auwais during those hours all the water that its then estate had by prescriptive right. If there were any doubt as to the construction of this language taken by itself, it would be set at rest by the explicit language used in the first part of the paragraph, wherein the plaintiffs are adjudged to be entitled during the correspond-

ing night hours from the same auwais, "to such amounts of water as they have acquired by prescription for their various lands." There was no occasion for discriminating between the plaintiffs and the defendant as to the classes of rights adjudicated. As matter of fact only similar rights of both plaintiffs and defendant were involved or considered. The main question was whether the ancient method of diversion established by prescription had been changed by prescription. The opinions of the commissioner and of the majority and minority of the Supreme Court are all full of indications that prescriptive rights only were involved, at least so far as the question of the alternate day and night use was concerned. For instance, the majority says that the defendant "acquired a prescriptive right to use the water by day;" and the minority that "none but prescriptive rights are set up in this case." The opinions contain frequent references to the lands that had acquired prescriptive rights and are largely taken up with a discussion of the law relating to prescriptive rights, and are based on a consideration of such facts and law. The decision could not in the nature of things have had reference to all the water, not only because the auwais in question were not large enough to carry all the water in times of plenty, but also because the rights adjudged,—whatever they were, were adjudged solely with reference to adverse user, and therefore they could not have extended beyond the user—which did not include all the water in times of plenty. The words "for its present estate" must have some meaning. They must limit the amount of water to that theretofore used or at least to that needed on such estate. In either case if the defendant wished to irrigate by day additional lands that had no water rights it could do so only by using thereon water that might otherwise be used or needed on the old estate. It could not, so far as that decision is concerned, use additional day water even though there were an abundance of it. We may add also that the controversy arose in a time of drought and that this fact was prominently before the court and that the rights in question were

spoken of with reference to dry and ordinary times as distin-guished from times of plenty. The prescriptive day right might cover all the water in the stream in dry times, but that would be, not because it covered all the water however much there might be, but because it covered a certain amount and there was not more than that amount in such times. It would indeed have been strange if the court had intended to adjudicate rights to so-called surplus water without more explicit language. Such rights are fast becoming of very great importance and their adjudication would involve questions of great difficulty. More-over, the question of the right to such water has long been a mooted question suggested in numerous cases that have come be-fore this court and always recognized as one of great difficulty, and the court has carefully avoided passing upon it until com-pelled to do so and has always regarded it as an unsettled question.

Nor does it follow as a matter of law as a necessary inference as distinguished from the actually intended decision, that all the water in the stream including surplus water was adjudged to belong to the defendant during the day, because the majority of the court based its decision on the ground that the exercise of the defendant's right by day could not diminish the plain-tiffs' supply by night. If all rights, prescriptive and other, had been involved, that conclusion could be supported only on the premise that all the defendant's rights were day rights and all the plaintiffs' rights were night rights; but since prescriptive rights only were involved, the conclusion as to such rights only would follow from the premise that the defendant's prescriptive rights only were all day rights and the plaintiffs' prescriptive rights only were all night rights. And, as indicated above, the same would be true as to a portion only of the prescriptive rights, provided the remainder were not interfered with, and such was the opinion of the majority of the court for certain exceptions as to the day right were expressly held in favor of certain other parties.

The further question arises, however, whether the court did

not decide elsewhere in the opinion, not indeed that the day or the night right or the prescriptive right or any absolute or exclusive right to any particular quantity or for any particular time covered the surplus water, but that all parties had a right to a reasonable proportion of the surplus water. On page 659 the court begins its opinion by saying:

"It appears to us to be well settled by the evidence, that in a rainy time when the Wailuku river was running full and all the watercourses leading from it were also full every one could use the water from the river for irrigation without reference to the time of user or the quantity taken. No one questioned this. When all had enough no one wanted more than he could use.

"So, also, when the rains, either those falling in the mountains only, or when they were general, made freshets in the river, the Wailuku plantation would run off into reservoirs surplus water that otherwise would run into the ocean. The conservation of storm water was free to all who desired to appropriate it and we see no valid objection to its practice being continued. It would become objectionable if the plantation or any party by the creation of immense reservoirs or other mechanical structures should take all the storm water and deprive others of an opportunity to do the same.

"No one testifies to any difficulty when rains are copious and water is plentiful. But it is in dry times, when the water is low in the river, that anxiety is felt by the cultivators of sugar cane and of kalo that they may not have enough water."

These were merely general introductory observations such as are frequently made in water cases. They were not intended to fix the rights of the parties. The language is general, not purporting to fix or define any rights, and the final paragraph of the decision which purports to give the conclusion of the court on the whole case makes no reference to surplus water either directly or by implication, but on the contrary expressly excepts Sunday, the water on which day was classed with surplus water. The court meant to remark in substance merely that it was better to use surplus water than to allow it to run to waste, and that any one could use it so long as the rights of others were not prejudiced thereby. The court saw no valid

objection to the defendant's continuing to run surplus water into reservoirs so long as no one was injured thereby, but declined to hold that it had a right to do so as against others during the specific time that it especially claimed such right.   The passage quoted has particular reference to the running of water by the defendant into its reservoirs.   The defendant did that chiefly on Sunday.   The court stated (p. 664) that the defendant's "exact claim" included the right to run water into its reservoirs on Sunday from 4 a. m. to 10 a. m., but in its final conclusion in which it defined the defendant's rights, it expressly excepted Sunday.   It could, then, hardly have intended to adjudge that the defendant had a right to run water into its reservoirs on Sunday.   And since Sunday water was classed as surplus water and was that to which the passage in question had special reference, the court could hardly have intended in that passage to adjudicate other surplus water.   The court apparently meant to state what was done and that no objection appeared to call for the court's intervention at that time.   It did not appear that any one else then desired to use such water, and if the defendant did not use it it would run to waste into the sea.   Nor did the questions of the enlargement of the auwais and the transfer of water to new land require a decision of the question of surplus water, even if the complaint was broad enough on those points to have justified such a decision, if it had been made, and the court in fact disposed (p. 663) of both those questions without reference to the question of surplus water, reasoning from a different premise entirely.   And from what has been said above upon the question of the alternate day and night right, it would be strange under the circumstances for the court to have decided such an important, difficult and often discussed question as that of the right to surplus water in such an off-hand indefinite way in an introductory part of a decision, and to have decided that the defendant was not then taking more than its proportion of the surplus water, day and night and Sunday, without any evidence or consideration as to area or location or character, whether arable or not, whether wet or

5–D

dry, konohiki or kuleana, adjacent to the stream or not, of the lands in question. So far as these considerations are concerned, the court could have considered on the evidence only prescriptive rights which admittedly do not cover surplus water, and a reading of the decision as a whole shows that those were the only rights that the court intended to adjudicate. It would, indeed, hardly have intended to make an abstract decision that the defendant was entitled to a fair proportion of the water irrespective of the question whether it was then taking more than its proportion and irrespective of any practical application of such a ruling to the facts or requirements of the case, and the court certainly did not have before it or attempt to consider such data as would be necessary to enable it to decide whether the defendant was taking more than its proportion of surplus water, nor did it attempt to decide that practical question.

If the court in fact adjudicated only prescriptive rights it would not be presumed to have adjudicated rights as to surplus water also, even if the complaint would have permitted such an adjudication. This follows from the principles of the law of *res judicata* set forth in the early part of this opinion.

The present allegations, in bar to which the former decision is specifically pleaded, are, besides those already referred to relating to the Manienie dam, in substance that the plaintiff is the owner of the ahupuaa together with the konohiki rights therein, and of all the water flowing in the streams and ditches thereon over and above the portion that the kalo or wet lands of the kuleanas are entitled to by prescription; and that the defendant has unlawfully tapped kalaniauwai by means of a flume and thereby diverted large quantities of water and still does so and therewith irrigates kula lands not entitled to water. Other allegations which are covered by a general plea in bar to the whole bill are in substance, that 126 acres and more belonging to the plaintiff in the lower part of the valley are kalo lands entitled to a continuous flow of water; that during the last three months the defendant has unlawfully diverted and still diverts large quantities of water from said stream and has used

and is still using the same for irrigating kula lands not entitled
to water, and has also unlawfully run said water into large
reservoirs and has thereby deprived the said kalo lands of the
plaintiff of water to which they are entitled.   Besides the speci-
fic pleas in bar to particular allegations there are general pleas
to the whole bill to the effect that all acts of the defendant com-
plained of were and are in the exercise of its rights which were
or might have been adjudicated in the former decision includ-
ing the right to all the water in the stream each day except Sun-
day, and to store or use in reservoirs or otherwise its propor-
tional share of the surplus water of the stream and of Sunday
day water.

We will assume that the matters formerly decided are the
same so far as they go as the matters now in dispute, as, for
instance, that the dams and flumes are the same in the two
cases.   Then, as shown above, it is *res judicata* that the dam
was lawfully constructed and maintained by the defendant, but
not that the defendant can take water whether prescriptive or
surplus, from above the dam to lands, whether kula or kalo,
that have no prescriptive right to water from that point.   It is
*res judicata* that the tapping of kalaniauwai by means of a
flume and the taking of water thereby to the kula lands to
which it was formerly taken by the defendant is lawful, pro-
vided it still desists from using a sufficient quantity of water on
its other lands then uncultivated but having prescriptive water
rights, but not that it can lawfully so take more water either
surplus or prescriptive than formerly or even the former amount
if it has resumed the use of water on such other lands or even
additional water in lieu of using water on other lands having
prescriptive rights, whether since acquired or then owned and
not included in those then owned and uncultivated.   It is *res
judicata* that the alleged 126 acres and more of kalo lands be-
longing to the plaintiff in the lower part of the valley are not
entitled to a continuous flow of water, and that the defendant
has the exclusive right, subject to the exceptions mentioned in
the former decision, to the day water, except on Sunday up

to the amount to which its former estate was entitled by prescription even though that was at times all the water in the stream. It is not *res judicata* that the defendant is entitled by prescription, subject to the above mentioned exceptions, to all the water, however much there might be, in the stream during the times above mentioned, or that the defendant is entitled to a proportional share or any share of the surplus or Sunday water, or that it is not so entitled.

It follows that the former decision is not a complete bar to the present suit and does not cover completely the several acts now complained of in bar to which that decision is pleaded. It may be relied on as far as it goes but beyond that the questions are still open.

The decree sustaining the plea is set aside and the case remitted to the Circuit Judge for further proceedings.

*A. S. Hartwell, Hatch & Silliman* and *Robertson & Wilder* for plaintiff.

*Kinney, Ballou & McClanahan* for defendant.