HENRY C. HAPAI, G. W. A. HAPAI AND NELSON K. SNIFFEN *v.* MAY K. BROWN, ARTHUR M. BROWN, HER HUSBAND, BLANCHE WALKER, JOHN WAL-KER, HER HUSBAND, WALTER F. DILLINGHAM, ROBERT W. ATKINSON, AND HENRY WATER-HOUSE TRUST COMPANY, LIMITED, A CORPORA-TION.

ERROR TO CIRCUIT COURT, FIRST CIRCUIT.

ARGUED NOVEMBER 13, 1913.          DECIDED NOVEMBER 29, 1913.

ROBERTSON, C.J., PERRY, J., AND CIRCUIT JUDGE ROBINSON IN PLACE OF DE BOLT, J.

JUDGMENTS—*construction—reference to other parts of record.*

If from the decree in a cause there be uncertainty as to what was really decided, resort may be had to the pleadings, the testimony, the findings and the opinion of the court.

ID.—*decree in partition—adjudication of title.*

Examined in the light of the pleadings, the evidence and the opinion of the court, a decree that the complainants in a suit in equity for partition "take nothing by the bill" is held to have been an adjudication that the petitioners had no title to certain land sought to be partitioned.

ID.—*res judicata—determination of title in equity suit for partition.*

The determination of the title to real estate by a court of equity in a suit for partition, made without objection by any of the

parties and not appealed from, is valid and binding upon the same parties and their privies in a subsequent action involving the same land.

### OPINION OF THE COURT BY PERRY, J.

In a statutory action to quiet title to the ahupuaa of Kaono-ulu on the Island of Maui instituted by the present plaintiffs in error the plaintiffs claimed certain undivided interests under the will of one Keaka. The trial court held that under the will the whole ahupuaa was devised in fee to one Paakuku under whom the defendants, now defendants in error, claim. On appeal this ruling was reversed, this court holding that the devise was to Paakuku and her brothers and sisters (the plaintiffs claiming under the brothers and sisters) as tenants in common. Ante, p. 499. Further proceedings were then had in the trial court. It was stipulated, as at the former trial, that "the plaintiffs claim title to the land described in the complaint herein through and under the children of Keaka, the sister of Hewa-hewa, the original awardee of the land in question, other than the daughter of said Keaka, namely, Paakuku, and that defendants claim title to said land through and under said Paakuku." The will of Keaka, dated February 12, 1850, was proven and evidence was introduced tending to show that by descent and by mesne conveyances the interests of the brothers and sisters of Paakuku had become vested in the plaintiffs. The defendants then announced that they claimed title to the whole land, first by virtue of a former judicial adjudication, second by descent and mesne conveyances and third by adverse possession and in support of their first defense offered in evidence a certified copy of the records of the supreme court in the case entitled Kahoiwai et al. v. Paakuku et al. including as a part thereof a certified copy of a deed from Keaka to Paakuku dated March 11, 1868, purporting to convey the whole ahupuaa. The evidence was received against the objection of the plaintiffs. The defendants offered to introduce proof of their other defenses but the court, being of the opinion that the claim of *res judicata*

had been sustained, declined to receive it. In rebuttal the plaintiffs offered, and the court refused to receive, Probate Record No. 1022, relating to the will of Paakuku, and a power of attorney by Paakuku to one D. P. Eldredge, dated February 11, 1875, both of which will be referred to later. Judgment was for the defendants.

The main question presented by the assignments of error is whether the defense of *res judicata* was successfully established.

The suit in equity was instituted in November, 1871. In their bill the complainants alleged that Keaka died on March 17, 1868, seized of the ahupuaa of Kaonoulu and other property mentioned; that complainants were children and heirs of deceased children of Keaka and that defendant Paakuku was likewise a daughter of Keaka; that after Keaka's death Paakuku went into possession of the ahupuaa jointly with the complainants and had continued in such joint possession until the filing of the bill, save as to a portion of the land which was sold by Paakuku; that on February 12, 1850, Keaka made a will which was admitted to probate on December 15, 1868; that by said will Keaka devised all her property "to all her heirs in common * * * and the said defendant Paakuku was made a quasi trustee of said estate, to hold it only for the use and benefit of all the heirs of the said Keaka"; that "regardless of the said trust" and without the consent of the complainants Paakuku on November 10, 1869, sold certain portions of the land so devised; that Paakuku had collected rents for the ahupuaa and had failed to account for them or for the proceeds of the sale of the land; that Paakuku had executed to one Wong Ko a lease of the ahupuaa "in fraud of the rights of" the complainants; that Wong Ko was "committing great waste and destruction upon the trees, timber, saplings and firewood growing" on the ahupuaa by cutting them and was thereby causing irreparable injury to the inheritance; that Wong Ko and Paakuku were "not able pecuniarily to respond in damages"; and that Paakuku had been "guilty of a breach of trust". The claim

was set up in the bill that the plaintiffs and Paakuku were, with others, tenants in common of the ahupuaa under the will of Keaka. The prayer was that Paakuku be compelled to render an account of the rents and other moneys received by her from the land, that the acts of waste be enjoined, that a partition be ordered of all of the lands devised under the will of Keaka and that the deed and the lease executed by Paakuku be cancelled "so far as the respective shares" of the complainants "are concerned". Paakuku in her answer, while admitting the execution and probate of the will of Keaka, alleged that on March 11, 1868, Keaka "being moved thereto by love and affection and for the consideration of the sum of five dollars to her paid" executed and delivered to Paakuku a deed whereby she conveyed absolutely to her the land of Kaonoulu and other lands, and that "by virtue of the said instrument the title in the said lands vested in her absolutely for herself, her heirs and assigns forever"; denied that any of the complainants had ever had possession of any of the lands; claimed "the truth to be that from the time of" the deed "up to the present time, this defendant has held undisputed possession of the ahupuaa" and that certain of the complainants had resided on the land only by her permission; that the will "had no effect as regards this defendant touching the lands of Kaonoulu * * * by reason of the subsequent deed" of Keaka; and denied specifically the existence of any tenancy in common with the complainants.

On June 6 and October 6, 1873, evidence was taken before a master, evidently by consent of the parties, relating to the execution of the deed of Keaka on March 11, 1868, the grantor's physical and mental condition at the time and the other surrounding circumstances. At a hearing before the court on November 6, 1873, the attorney for Paakuku "asks that the testimony recorded and taken before the Master on the 6th of June and October 9th, 1873, be admitted." The minutes are silent as to any objection to the request and the transcript was presumably received for there are indications in the opinion of

the court subsequently filed that the evidence was considered. Under date of October 1, 1874, the following minute appears: "The opinion of the court is that the petitioners have no title to the lands of Kaonoülu and Kaluapulu and so adjudge. There is no controversy about the title of the land at Wailuku and the petition for partition of that land is hereby granted and decreed accordingly." Two days later Chief Justice Allen filed his written opinion concluding in the words just quoted from the minutes and stating at length his reasons for his conclusion. On October 12, 1874, "the court order decree entered" and on the same day a decree, signed by the chief justice, was entered reading thus: "It is ordered, decreed and resolved by the court here that the said complainants take nothing by their Bill and that the defendants have and to cover their costs herein incurred."

On behalf of the plaintiffs in error it is contended that the decree does not on its face contain any adjudication that the complainants in the equity suit had no title and that it should be regarded as a dismissal of the bill on the ground of lack of jurisdiction to determine the issue of title; and further that in aid of its interpretation the remainder of the record cannot be referred to. It is now too well settled, however, to admit of doubt that if upon a plea of *res judicata* the judgment relied upon as constituting the former adjudication does not of itself declare with certainty the precise scope of the matters adjudged, resort may be had, in aid of its interpretation in this respect, to the pleadings, the opinion of the trial court, the findings of fact and the testimony. "It not being certain" from the decree "which was the precise point determined resort may be had to the proceedings to ascertain which of the two points was determined." *Rawlins* v. *Honolulu Soap Works,* 9 Haw. 496, 501, 502. In that case "the proceedings and the decision" in the former action were examined for the purpose stated. So, also, in *George* v. *Holt,* 9 Haw. 47, 48, the declaration, the answer and the transcript of the evidence were resorted

to; and in *Polapola* v. *Carr,* 9 Haw. 466, 467, and *Nakookoo* v. *Noholoa,* 19 Haw. 679, the opinions furnished the necessary light. "It is elementary that if from the decree in a cause there be uncertainty as to what was really decided, resort may be had to the pleadings and to the opinion of the court in order to throw light upon the subject." *National Foundry* v. *Oconto Water Supply Co.,* 183 U. S. 216, 234. "The elementary rule is that for the purpose of ascertaining the subject matter of a controversy, and fixing the scope of the thing adjudged, the entire record, including the testimony offered in the suit, may be examined." *Washington Gas Co.* v. *District of Columbia,* 161 U. S. 316, 329. The findings of fact by a trial court "even if not conclusive as against all testimony, are certainly very persuasive evidence of what the court did in fact decide." *Last Chance Mining Co.* v. *Tyler Mining Co.,* 157 U. S. 683, 690. To the same effect are *Yates* v. *Utica Bank,* 206 U. S. 181, 183, 184; *Burthe* v. *Denis,* 133 U. S. 514, 522; *Russell* v. *Place,* 94 U. S. 606; *Davis* v. *Brown,* Ib. 423; *Hornbuckle* v. *Stafford,* 111 U. S. 389, 393; Freeman on Judgments, §273; and 23 Cyc. 1537 et. seq.

Reference to the remainder of the record leaves no doubt that it was adjudged in the equity suit that the complainants, the predecessors in interest of the present plaintiffs in error, had no title to the ahupuaa of Kaonoulu. The pleadings presented the issue as to the execution and the validity of the deed and as to the relative force and effect of the will and the deed. Evidence was taken as to the fact and the circumstances surrounding the execution of the deed. An examination of the written opinion shows clearly that the court found that the deed had been executed and delivered as alleged and that its execution was free from suspicion and ruled as matter of law that the deed was operative as a conveyance of the ahupuaa to Paakuku alone, that the will was not operative as a devise to Paakuku and her brothers and sisters and that, for these reasons, the complainants had no title. Chief Justice Allen, after

reciting (6 Haw. 124) the substance of the pleadings and rec-
ognizing that the complainants claimed under the will and the
respondent Paakuku under the deed and that "it was undoubt-
edly the intent of the testator that they" (Paakuku and her
brothers and sisters) "should all have an interest in the prop-
erty" (under the will), held that "a testator has a right to make
or cancel it" (a will) "and there is no right which vests by it
which disables the testator during her life from making a con-
veyance by deed," and that the presentation by Paakuku of the
will for probate did not preclude her "from claiming under a
different instrument". Referring to the complainants' conten-
tion that "the pretended deed of gift of the 11th of March,
1868, is not without grave suspicions of its execution and in
its very terms is a fraud upon the other heirs", the court said
that "fraud must be proved—suspicion is not sufficient" and
that "in this case the circumstances favor the validity of the
deed". The conclusion that "the petitioners have no title" to
the land of Kaonoulu followed logically from these findings and
rulings. And so did the decree that the "complainants take
nothing." We find nothing in the record to support the view
that the decree constituted merely a dismissal for lack of juris-
diction.

It is further contended that a court of equity is wholly with-
out jurisdiction to try the title to real estate and that Chief
Justice Allen's decree was consequently void. This objection
is raised now for the first time. It was not raised in the equity
suit. On the contrary, the trial and the determination of the
issue of title was with the consent of the parties. Under the
circumstances the objection to a trial of the title by the court of
equity must now be deemed to have been waived. In *Kuala* v.
*Kuapahi,* 15 Haw. 300, a suit in equity to quiet title where the
entire controversy turned on the issue of adverse possession, this
court held that "the mere fact that the title had not first been
adjudicated at law cannot avail the defendant" and said: "It
seems to be pretty well settled that, as it is variously expressed,

although neither consent nor negligence will confer jurisdiction in equity where none really exists, yet, when the case is not wholly foreign to equity jurisdiction, when it is not on its face such that equity could have no jurisdiction over it, as, for example, an action to recover damages for an assault, or for a libel or slander, when the defect is a want of equity and not a want of power, when the objection is merely that a plain, adequate and complete remedy at law exists or that equity is without jurisdiction in the particular case merely for some special reason or the absence of some particular element, when equity is competent to grant the relief sought and has jurisdiction of the subject matter, when the case is not without traces of equity jurisdiction, the question of the alleged want of jurisdiction may be waived and will be deemed to have been waived if not raised until the case comes to the appellate court." In support of this statement of the law were cited several decisions, mainly from the supreme court of the United States, to which list may now be added the later case of *Beyer* v. *LeFevre,* 186 U. S. 114, 118. The decision in *Kuala* v. *Kuapahi, supra,* has not been overruled in *Ahin* v. *Opele,* 17 Haw. 525, *Kaneohe Rice Mill Co.* v. *Holi,* 20 Haw. 609, or *Brown* v. *Davis,* ante, 327, cited for the plaintiffs. In none of these cases was the objection waived in the trial court. In none of them is there any indication of an intention to overrule the *Kuala case.* In *Mill Co.* v. *Holi* the principle of the *Kuala* case is expressly recognized but held to be inapplicable. Some of the expressions in *Brown* v. *Davis* might, perhaps, if read alone be construed as a ruling that there is no inherent jurisdiction in equity to try the title to real estate but read with the remainder of the opinion and with reference to the facts then before the court it is obvious that the court did not intend to so rule. In that case, a suit for partition, the trial judge declined to grant a hearing until the title should be determined at law and this court affirmed the order appealed from. The effect of a waiver in the trial

court was not considered and was not an issue in the case and the *Kuala* decision was not even referred to.

The equity case tried before Chief Justice Allen was not purely an ejectment bill. The complainants alleged that they were in possession, jointly with Paakuku, the latter claimed that such of the complainants as were residing on the land were there by her permission and the court made no express finding on the subject. The inference, if any need be resorted to, must be, in support of the validity and regularity of the proceedings, that the court found that the complainants were in possession. The suit was far from being "without traces of equity jurisdiction". It was alleged that Paakuku was a trustee, that she had committed a breach of the trust and that she had committed and suffered waste, and discovery and an accounting from her, an injunction against waste, and a partition of the lands were prayed for. The case was not "wholly foreign to equity jurisdiction." It was not "on its face such that equity could have no jurisdiction over it", but on the contrary presented on its face familiar subjects of jurisdiction in equity. Even if interposed *in limine* the objection could have been at most that equity was "without jurisdiction in the particular case merely for some special reason or the absence of some particular element", namely a prior adjudication at law of one only of the many issues involved. Moreover, it is inexact to say that there is any inherent want of power in a court of equity to determine an issue of title to land. "The determination of title to real estate is within the scope of the general jurisdiction of a court of equity." *Beyer* v. *LeFevre, supra.* "I may observe that the question which I have decided is one of law and not of equity, and that a partition suit being an exercise by the Court of administrative rather than contentious jurisdiction, it might not have been right that I should have dealt with it if any one objected. But no one did object, in fact; and I think that, under the circumstances, I do not go beyond the limits of my proper jurisdiction, and that I do what is best

for the parties, by now deciding the case." *Burt* v. *Hellyar,* L. R. 14 Eq. 160, 166. See also 30 Cyc. 244; 16 Cyc. 128, 129; Freeman, Cotenancy & Partition, §502 and Bispham, Prin. of Eq., §849. "The reason for remitting the investigation to a common law court is one of policy and fitness, rather than of any inherent want of power in a court of equity; and hence, if chancery decides, and there is no reversal in a proceeding directed to that end, the result is not void, but must stand and be respected." *Wallace* v. *Harris,* 32 Mich. 379, 389. Another reason is that each of the parties concerned is entitled to a trial by a jury on the issue of title. *Whitehead* v. *Shattuck,* 138 U. S. 146, 151. It is likewise competent, however, for each of the parties to waive this right.

The record in the equity suit was properly admitted in evidence and shows a valid, former adjudication that the predecessors in interest of the present plaintiffs in error derived no title under the will of Keaka to the land described in the declaration in the case at bar. That adjudication is binding as against the plaintiffs in error and in favor of the defendants in error. *H. C. & S. Co.* v. *Wailuku S. Co.,* 14 Haw. 50.

In the power of attorney (February, 1875) offered in evidence by plaintiffs Paakuku is claimed to have recited that she took the land under the will of Keaka. There was no offer to prove that any one acted in reliance upon the declaration, if it was made, or was misled by it. The instrument alone did not tend to prove an estoppel. Probate Record No. 1022, In re Estate of Paakuku, was offered by plaintiffs "for the purpose of showing that in 1876 the children of Keaka did not regard the determination of the partition suit as decisive of their rights in the land in controversy and * * * all regarded the partition suit and determination thereof as of no binding force whatever". It is not claimed that in Probate Case No. 1022 any adjudication was had of the rights now under consideration. "The proceeding", it was stated in the offer of the record, "was never decided * * * and is still in abeyance." The views

entertained by the children of Keaka concerning the validity and effect of the decree of 1874 would not, of themselves, affect the validity or effect of the decree.

The assignments of error are not sustained. The judgment is affirmed.

*L. Andrews* for H. C. Hapai and G. W. A. Hapai.

*R. P. Quarles* for N. K. Sniffen.

*A. A. Wilder* (*Thompson, Wilder, Watson & Lymer* on the brief) for defendants in error.